3.18.01.01 Robert Mortensen, Appellate by Julie Boynton David Chambers, Appellate by Thomas Delente and Alonzo Levar, Appellate by Jarek Zawada Mr. Burson, I'm sorry, my father's name is Judas, right? May it please the court, my name is Julie Boynton, I'm here on behalf of Robert Mortensen, who is present in court today with his wife and my co-counsel, Mr. Stanley Cantwell. Judging the trial course of the case should be reversed. As counsels are well aware, the statute of limitations begins to run when an injured individual is possessed of sufficient information concerning his injury to put a reasonable person on inquiry notice to determine whether actual conduct exists. According to the Illinois Supreme Court, when a person is possessed of sufficient information concerning his injury to put him on reasonable inquiry notice, it is a question of fact to be decided by the trial court. There is this one exception, and that's when only one conclusion could be drawn from the fact. The exception does not apply in this case in the trial court either, in dismissing the case for that purpose. The facts in this case clearly show that more than one conclusion could be reached, and that a summary disposition should be left to the trial of the fact. In evaluating when the statute of limitation begins to run, the Costello case, which is cited in our brief, gives some assistance in determining when a plaintiff has sufficient information to be put, to be placed on inquiry notice, where it states that the statute of limitation begins to run when the client becomes aware that the problems stem from another's negligence and not from natural causes. Whether a marital settlement agreement or a judgment of divorce arises from natural causes, the divorce process, as opposed to the attorney's negligence, is often difficult for a client to ascertain. This is especially true where the client has, in this case, not been advised of all the relevant facts of the law by the attorneys representing him to allow him to make an informed decision. It's also difficult because divorce cases are a little different than other litigation where there's a clear winner and loser. In a divorce case, everybody feels they're wrong. The payer feels they're paying too much. The one who's receiving believes they're receiving too little. So it's a much more difficult case to ascertain the negligence of the attorney as opposed to a natural cause for injury. The claim of both defendants that plaintiffs were put on inquiry notice at the time of the judgment is simply not supported by the facts. Unhappiness does not equate to inquiry notice. Just merely because somebody is unhappy with the ultimate results of the divorce does not mean they're on inquiry notice that the attorney engaged in negligent conduct. The facts in this case show that because Attorney Schaefer and Zahauer failed to advise the plaintiff of necessary facts and laws to make an informed decision, he did not realize at the time of the judgment that he was injured by the negligence of the attorney. He thought it was a natural consequence of the divorce process. And just to highlight a few points, Attorney Schaefer allowed the plaintiff to be held in contempt and sentenced to jail for failure to obey an order of child support which did not even exist, did not tell the client that no such order existed, did not tell the client he could not be held in contempt if no such order existed, and without, he did not advise the plaintiff that a modification of child support could not be made by an agreement of the parties, but yet he ends up in contempt for an oral agreement of the parties to modify support which is simply not enforceable and had those defenses been raised, he likely would have been not held in contempt. The plaintiff believed he was held in contempt if you read the transcripts from the hearing because he believes he misunderstood what he had to pay in support. He thought it was based on his net, not his gross income. This clearly shows he didn't know that the attorney had failed to raise these defenses. He thought it was his error, so that did not put him on notice. Instead, during the contempt proceedings, the plaintiff... The attorney is still holding him in contempt. The court held him in contempt because the defenses to the contempt proceeding were not raised by the attorney. The client wasn't even advised that such defenses existed and that he was not in contempt. There was no order to hold him in contempt at all. During the contempt proceedings, the plaintiff inquired the court, why was he being required to comply with court orders? Because he was clearly confused and he indicated his confusion to the court and the court told him because that matter was not before her. After the plaintiff was held in contempt, he was unhappy and concerned about what was happening with the representation of him in the divorce and what Attorney Schaefer was doing. So he did exactly what the law says he should do and what a reasonable person would do. He sought out another attorney. Unfortunately for Mr. Zahauer, that attorney was possibly even more negligent and incompetent than the first one. Attorney Zahauer never obtained the client's file from Attorney Schaefer, never reviewed the court file, this is his own testimony, and never looked at the docket. Thus, he never learned that no order existed from which plaintiff could have been held in contempt. He did not know what discovery had been conducted or not conducted. He did not know the history of the case and thus he could not learn about the negligence of Attorney Schaefer to advise. Was he hired to find out any past malpractice or was he hired for the divorce case? He was hired to come on to the divorce case but an attorney is charged with the duty to tell a client not only causes of action he might have related to that case but other causes of action. So that doesn't excuse him from saying he never told, because he never learned himself, Mr. Zahauer never learned himself that there was no order for him to be held in contempt. So it's your position when you're hired as a lawyer you have to investigate any possible complaint that the client might have against anybody for any reason? That relates to the client's circumstances, yes. And that's the duty of any time you're hired and there had been previous representation? Right, and I'm trying to think of the case. Don't come to me. But it was somebody who was hired for a workman's comp case and did advise the client that they would have separate cause of action against the third party. That's what brought that loss effect, I can't remember. Maybe it's off the top of my head but I don't think it was. The record shows that Attorney Zahauer, instead of making a thorough review of the file. So you cited that case in your brief, right? I believe so. Okay. That was a workman's comp case and the allegation was that they didn't file a third party action. They didn't advise the client that a third party action could be filed. The record shows that Zahauer merely proceeded on behalf of Schaefer, adopting the MSA that Attorney Schaefer had put his name on it, told the client it was the best he could do without advising the client of the risks and benefits of having the case, providing the risks and benefits of the marital settlement agreement. The marital settlement agreement had fatal effects which were unknown to the client. I'm not going to go through all of them. They're in the brief. Because another attorney, another attorney, Schaefer, Zahauer, had advised him with the facts of the law so he could make an informed decision. For instance, neither attorney had proposed to the wife. They filed subpoenaed interrogatories that caused the wife to update her financials. Now they claim that the client should have known at the time he filed the MSA that the mortgage was in foreclosure. And that's simply not supported by the facts. Mr. Mortensen was required to pay twice, even though he was paying the wife initially $7,500 a month when she was ordered to pay the mortgage and utilities, and later another $16,000 to bring the mortgage current. He didn't know that she hadn't paid him. His attorneys didn't advise him. He thought the mortgage was current because he had paid the funds to bring it current. So he did not know that that provision, which was requiring her to get the note out of his name, the mortgage out of his name, could not be achieved because the mortgage company would not accept partial payment at that point. Did he know who held the mortgage? I can't answer that fact. He was one of the contractual parties. I believe so, yes. He was one of the contractual parties. But he had paid twice to bring the mortgage current, so his belief was the mortgage was current and the wife was ordered to pay. Did he have any obligations to look at the bank or the mortgage holder? I think if anyone did it was the attorneys who should have been advising him. This isn't a proper provision for the divorce. It can't happen because the wife isn't current. If they had asked for her updated financials, they would have found that out, but they didn't. So he didn't have to ever make any inquiry to the people who held the mortgage about what was happening? I'm not saying he didn't have to, but the inquiry was made. He was told it was in arrears. He brought the payments current twice in pursuit of court order. So he had no reason to believe at the time the judgment was entered that it wasn't current. And, you know, he relied on his attorneys to tell him if there was a provision in the marital settlement agreement which couldn't be met. He was relying on his attorneys to obtain that information. By this point, he and his wife aren't speaking. And I don't know what access he had to the mortgage lender. They also did not tell the plaintiff that he was overpaying child support, including paying on a child and eventually one and then two who were emancipated. And it was no small amount. It was $200,000. Now, defendants rely on gale case, but this case is clearly distinguishable from the gale case. Was he aware of the children's ages? He was aware of the children's ages, but he didn't know that when a child turns 18, he doesn't have to pay. He doesn't know. Lay people just don't know this fact. And I've done legal malpractice for almost 20 years now. And I know justices and, of course, tend to give a lot of credence to normal lay people who know the law and know what the requirements are. But it's just simply not true. They go to attorneys because they have no idea. Unless the attorney tells them we can stop paying at this point. He thinks if there's no order in place, he has to pay. And there was no diet order on the support date, which was another negligent act of the defendant. So, he didn't know he had to stop paying. He just paid because he had been told he had to pay. There was no diet date. Nobody ever told him that when his child was emancipated. He didn't know they told him to stop it because he didn't know it could be stopped at that age. Now, this case is distinguishable from gale, which, in that case, the court said the party knew when they read that MSA and certain provisions weren't included. But in this case, both Mr. Mortensen and his wife testified before the court as to all the provisions that they had agreed to. They testified that the maintenance was to be three years reviewable. They testified they needed to have a right of first refusal in the business. Mr. Mortensen believed and relied on the fact that his attorney had properly documented the agreement of the parties. They went into court. They testified. The judge accepted that testimony. He thought everything that was necessary to enforce those provisions were before the court because he had not been told otherwise. Did he get a copy of the marital settlement agreement? He did get a copy of the marital settlement agreement. Is he literate? He's literate, but the fact that it says three years, he doesn't know that it has to say reviewable. And when they go to court and they tell the judge, this is our agreement, judge, and this includes a three-year reviewable provision, he thinks the court has knowledge of it and is accepting it with that provision. He doesn't know that the writing has to contain that. And this is where I think courts don't realize how clients just don't realize the necessity of putting in these details. He believes it's in because they told the judge and the judge has accepted it. So it's different than Gail was deciding and not testifying to. The very facts that the attorney should have included were testified to the court as what the agreement proposes. So is the agreement drafted at the time that they're in court testifying as to the terms of the agreement? No, it would be drafted before. That's what I'm saying. Is it there at the time they testify? Yes. Thank you. One minute. Should the judge be reading it? See if the testimony is in sync with the written word. You would think, but it didn't happen in this case. I can only say my client, we're saying is this a probable result of the divorce proceedings? Is my client wrong in thinking that? Or does that put him on notice of the attorney's negligence? We're saying no because the court's been disclosed. He thinks everything's disclosed to the court. He thinks he's fine. And it actually turns out that he's not fine. And it wasn't the natural consequences of the divorce proceeding which got him in trouble. It was the negligence of his attorneys for failing to include information which they should have included. And the Illinois Supreme Court knows that a person is not held to a standard. A client is relying on their professional, their attorney, to advise them of all the important facts in law. A client doesn't know this stuff inherently. Women would be resurgent if they're relying on an attorney to do that. And in this case, it's clear the attorney did not do it. Neither attorney did it. And they admit as much in their depositions. And that testimony's in there showing they never obtained the, especially Mr. Zaino, Time. Thank you, Ms. Quarantin. And Mr. Valenti, Mr. Feldman, I believe Mr. Valenti is here first. Yes, Your Honor. And you have five minutes. Thank you. Good morning, Your Honor. May it please the court, counsels. On behalf of David Shaffer, Thomas, again, we are seeking the affirmation of the lower court's decision to dismiss the malpractice complaint, Your Honor, for the following reasons. As a matter of policy, my client David Shaffer's representation of Mr. Mortensen and the underlying divorce until his withdrawal on January 20th of 2010. In our briefs, which I won't belabor this morning, Your Honor, see that we cite a number of dates that would have triggered a statute of limitations for the filing of the malpractice complaint. First being the contempt order that counsel just alluded to. What we know, based on the testimony and the efforts, efforts, and depositions before the court, that on the date of the contempt order being entered against Mr. Mortensen, he was aware of a number of things that he now complains of, talking about the fact that my client had allegedly not taken certain actions that he wished my clients had taken, that the home was, in fact, in foreclosure. He was acknowledged by the trial court of those facts. We think that this date triggering this statute of limitations would be supported by the Belden case, in which case we saw in the third district of the Illinois public court that the statute of limitations for legal malpractice was triggered by the entry of an adverse order against the plaintiff. We would also state that a reasonable person would be on notice that an order committing him to jail and contempt would put a reasonable person on notice that that's an adverse order. Further, his deposition testimony where he said Mr. Schaffer had knocked off certain things before that, and he asked the court similarly on the hearing date, would show that at that point he was on inquiry notice to see that my client had done something negligible that would have caused his harm. What were the defects in the case you're citing in the third district? Yes, Your Honor. I was cited in the Belden case, Your Honor. Right. And in the Belden case, an order entering the statute of limitations when the order ending the case was triggered in an adverse order was entered. And Your Honor, under that case, I do apologize to the court that they don't have the summary in front of me. Okay, but the adverse order. Being entered or triggering the statute of limitations. But it might be important to know what that order addressed. For example, like a final judgment of dissolution incorporating an MSA are written documents. Yes, Your Honor. In this scenario, I believe, was a contempt directed him to present himself to jail on the basis of an oral agreement. I apologize, Your Honor, for interrupting. I do believe that the adverse order, whether it be based on jury agreements or oral agreements, I think was entered by the trial court. And though the allegations are that my client did not do something to defend him in the trial court, it was entered by the trial court and not by an agreement of my client, which would, I think, make it distinguishable in that regard. Additionally, Your Honor, it was through Mr. Mortensen's deposition testimony that he indicated around January 18th of 2010 that he fired David Schaffer as his counsel. He indicated in his deposition that this was for a number of reasons. He indicated for my client allegedly not taking certain actions in the court to protect Mr. Mortensen's rights. I believe that really would end my client's liability in this matter as well as would trigger a statute of limitations. At that point, Mr. Mortensen had testified that he was seeking new counsel to look into the actions of previous counsel, and that would put him on notice as a reasonable person to inquire as to whether or not there was actionable comment against my client. Lastly, Your Honors, I do believe that the date that my client withdrew his counsel at Mr. Mortensen's direction, January 20th of 2010, was the date that Illinois case law supports as being the date that triggered the statute of limitations. On that date, we do know that Mr. Mortensen was apprised through his deposition testimony that he indicated he fired Mr. Schaffer, and this was his action. This was the fruit. Mr. Veja's representation was the fruit of Mr. Mortensen's actions in seeking to see if there was actionable conduct caused by Mr. Schaffer. For those reasons, Your Honors, I do believe that the statute of limitations would also, if this were to go out to the date that judgment and dissolution was entered, my co-counsel can address those matters, but I do think Illinois law supports that the date that the case was ended would be the date that statute of limitations were triggered. We ask that Your Honors affirm the lower court's decision as to David Schaffer, and I would cede the remainder of our time as FOB to counsel. All right. Thank you, Your Honors. Thank you, everybody. Mr. Valenti. Mr. Dalton. Ten minutes. Thank you. Good morning, Your Honors. May it please the court and counsel, I'm John Dalton representing Mr. Zahar in this case. As counsel for plaintiff pointed out, the issue here is whether the undisputed facts lead to the conclusion that and its cause to put a reasonable person on inquiry to determine whether actual conduct was involved. The issue is not the state of mind of the plaintiff, which plaintiff argues in the reply that it's the plaintiff's state of mind that controls when the statute of limitations is triggered. The issue is what plaintiff, it's not what plaintiff actually knew. That's what plaintiff's appeal is based on, and that's why plaintiff's appeal should fail. As pointed out in, you know, the reply itself actually points to the problem of using plaintiff's actual notice or the party's actual notice, the client's actual notice of a claim. When he asked, they asked the rhetorical question, how could the trial court ascertain the plaintiff's state of mind or his knowledge? In Nolan v. John Manville, the court addressed that and stated that if knowledge of negligent conduct were the standard, a party could wait to bring an action far beyond a reasonable time when sufficient notice has been received that would be possible in evasion of one's legally protected interest. And so, once it reasonably appears that an injury was wrongfully caused, the party may not slumber on his rights. Actual knowledge of injury is inherently unknowable by the trial court, by a trial court, by actually anybody other than the party itself. So the trial court should not be required to read the plaintiff's mind, and that's what the basis of, the underlying basis of plaintiff's appeal is in this case. How bad was this prove-up? What's that? How bad was this prove-up? How bad was it? Compared to the judgment? It actually was not that bad. There were things, though, that were clearly not included in the MSA. And, you know, that was notable at the time of the MSA and the judgment being entered. And the plaintiff testified in his deposition that he'd read the MSA, he was involved in negotiations with the MSA, he was unhappy with the MSA. In fact, in the briefs filed with this court, the plaintiff said he felt forced to be, to enter into the MSA. So this is much like the Rommel case, which we were talking about, the workers' comp case, where the settlement was clearly not what the plaintiff wanted. The plaintiff wanted, he was unhappy with an agreement to split his interest in his ownership of his business with his ex-wife. And that wasn't included in the MSA. He knew that the three-year limitation, or three-year die-out period or review period wasn't in the MSA. He knew that the mortgage had been in foreclosure for years. He was a party to the foreclosure, I believe, because he was on the top, as Your Honor noted, he was a party to the contract. So he knew there, let's see, he knew that both Schaefer and Zahauer, the two defendants in this case, didn't take actions to have orders that were supposedly bad orders reviewed and modified. And basically what the plaintiff is arguing is the malpractice prior to the MSA and the judgment for dissolution of marriage made the judgment date, it told the judgment date somehow, which is very similar to the Rommel case, where there was, you know, assurances that we'll go on and get you more money, but the settlement in the Rommel case clearly said if you're getting $125,000, that's what you're getting. And it resolved all disputes. Much like this case, this case was ended as of the date of the judgment for dissolution of marriage. And much like the Gale case, which all counsels referenced on Reddit. So... Now that addresses your client. Yes. Because you're saying he should have, a person reasonably should have known at that point that the MSA is in the hands, judgment has been entered incorporating the MSA, and that there's discrepancies. Yes. And so that's the date at which time starts running. Yes. And that date was August 10th, 2011, and the suit wasn't filed in this case until December 4th, 2013. Now, opposing counsel may say, okay, but the other attorney is a matter of legal advice. Excuse me? Well, are both cases the same in your mind? I think certainly both cases, the statute started running at the latest, the date of the judgment. Okay. So there's a piggyback effect. Sure. And I just want to extend Mr. Shaffer's counsel's argument. The statute may have started before that when there was an obviously adverse order entered against Mr. Mortensen in January 2010, a year before. But certainly the statute ran... There seems to be a difference in a reasonably should have known situation in one situation versus the other. There may be documentation. Well, I would say the difference would probably favor Mr. Shaffer in that there was an adverse order before Mr. Sahar even came on. The adverse order being? That Mr. Mortensen was held in contempt and he could purge it with any money. For not paying an additional amount on an agreement. Right. Or agreement, which is unenforceable. That's right. Why would that put you more on notice if you're giving your reliance on an attorney for legal advice? Well, the notice is that you're about to go to jail. It's an adverse order. That's what the notice... Of course it's adverse to that person. Yes. I'm just trying to figure out the standard of reasonably should have known. Well, that is... The standard is based on what a reasonable person would have... Would believe based on the uncontested facts at the time of the adverse order in 2010 and then the adverse order in 2011. So, like you said, it's a piggyback in that Mr. Shaffer is protected by both orders. Mr. Sahar is protected by the... Or not protected, but the statute of limitations began to run... Later. Later. But certainly well before... Long before two years after the complaint was filed. Two years before the complaint was filed. Excuse me. Two minutes, please. So, as I stated... The reasonable person's standard, is that objective or subjective? Objective. As opposed to what Mr. Mortensen knew and what the... As I said, what this entire appeal is based on. What he knew and what he thought. Which the trial court judge could not read Mr. Mortensen's mind. None of us could. The only one who knew what Mr. Mortensen knew is in Mr. Mortensen's mind. And as noted in Johnson & Nolan v. Johns Manville, that is something that can be manipulated by a plaintiff trying to toll the statute of limitations. And that is why it's an objective standard as opposed to a subjective standard according to what the plaintiff actually did. As a result of the untimeliness of the plaintiff's filing of the complaint, we ask that this court affirm the trial court's summary judgment in favor of Mr. Zayhauer. Thank you. Thank you, Mr. Feldman. Mr. Boehner. I just heard Mr. Schaefer's argument that there were later counsel and that they were on notice that he did something wrong. As I talked about before, Mr. Mortensen believed that based upon the transcripts, it's clear to see that he was held in contempt because he misunderstood what he was debating. He accepted that. He was never told by his attorneys, never advised by his attorneys that the phantom order did not exist or of his defenses. Moreover, he had an opportunity, he was given by the court an opportunity to file a motion to reduce the court, which he didn't do. Why is that important? Because I think they're trying to make an argument of succession of counsel, and a succession of counsel only applies if you believe the liability of the case is viable when it gets to succession of counsel. Damage had already been done by Schaefer, which was no longer viable to correct because child support runs from the time of motions filed to modify and that wasn't done. So there was already irreparable damage done by Mr. Schaefer. Second, I think Mr. Zayhauer makes a lot of our argument and say, why did he tell Mr. Mortensen all these facts about how bad Mr. Schaefer represented him in the case? He did go and inquire. He asked the court at the hearing on contempt. He then says, I don't think something's right. I'm going to go to another attorney. That attorney does not advise him. It's not until it's unrebutted at the banquet of our client that says, I didn't learn until Mr. Kaplan came in. Mr. Kaplan went through the docket within two days, knew there's a huge problem here, and had Mr. Zayhauer done the same thing? So it wasn't that our client wasn't trying to investigate. He was trying to investigate. The problem was he got a second incompetent attorney who failed to look at the necessary documents to give him the advice he needed. That should be on him. That should be on the attorneys who failed in their job. The law is that if there's more than one reasonable conclusion that could be made, the case should not be dismissed on summary judgment grounds. In this case, it is clear that a reasonable jury could find that Mr. Mortensen, as a reasonable person with the knowledge and facts available to him, did not reasonably learn until 2012, when he was advised of what the law and the facts were, that he had an actual cause of action. And that's what the court should focus on, because he should be penalized. I think in the Mungo case, the Mungo case judge, I'm going to paraphrase him a little bit here, said an attorney should be able to say that. Well, we're not concerned what he knew. Well, but it's important from the fact that you have to judge it from a reasonable person standing in his shoes with that knowledge, with that knowledge and facts. And given that he wasn't giving the – he wasn't able to make an informed decision about the MSA because he didn't have the facts and the law presented to him by his attorney, so he couldn't make that decision. Then he's going along, and just the attorneys say, this is the best you can do. The judge says, we have to get this settled. He's unhappy. It happens almost every divorce, and it happens almost every legal malpractice case, where they're forced to say, this is what you've got to do. They believe the attorney. They don't think they have options. They're not told what they can get if they go to trial. And so they acquiesce because they think they have no other options. And it's not until Mr. Kaplan comes into the case that he realizes there were a whole lot of other options that could be done, including shooting. He'd been told sooner, and you were to sue Mr. Schaefer sooner. But Mr. Zahauer fell down on the job and didn't tell him that he could sue Mr. Schaefer for the damage he'd already done that she'd given him. One minute, please. Okay. This one I have to get off my chest. It's the Rommel case. I was attorney for the Rommel case. It was the most unfairly unjust, wrong decision of my grade. Mr. Rommel had a 33-year-old. There were methyl chloride types, which water types in that world didn't breathe the methyl chloride. He got sicker and sicker, and the company wouldn't do anything about it. So he went to a florist and imported it, and they started treating him worse. He eventually got so sick from the ingestion of methyl chloride, he wasn't able to work. He died on the day his deposition was to be taken into the case. They made a decision. They brought two cases. He was attorney for 33 years. Brought two cases. He got one attorney to help on the work comp case and one attorney to help on the whistleblower case. And Mr. Rommel was in just dire situations. He didn't have money, so the attorneys told him, Settle the first case. Settle the work comp case. Get the $100,000. Your family can survive until we get you money in the work comp case. And so he takes their advice and settles it for way more money. He was never told about how much more he could have gotten. They just said, do this as a basic litigation strategy. The attorneys that were in did the same attorney with another partner. They asked him a semi-judgmental motion. They had a question in there. And he was never able to get recovery in the whistleblower case. And that's what happened. The court said he should have known when he entered the bad settlement. He did know. He did know. But it was not advice of counsel that that stuck. That's what they actually should have said. So I just had to give it up. Yes! What are your reasons for that? What do you get? I don't know. Thank you, Ms. Pointland. And thank you both, all three of you, for your argument today. The rules of this matter are under advisement. Get back to the written order. We'll take a short break. We'll now take a short recess.